```
               UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

<u>Automated Facilities</u>
<u>Management Corporation</u>

    **v.**                              Case No. 12-cv-327-PB
                                    Opinion No. 2013 DNH 138
<u>Smartware Group, Inc., et al.</u>


<u>**MEMORANDUM AND ORDER**</u>

Automated Facilities Management Corporation ("AFMC"), the exclusive licensee for United States Patent Nos. 7,548,970 and 7,606,919 (the "'970 Patent" and "'919 Patent," respectively), has sued Smartware Group, Inc., for patent infringement. Smartware has responded with a counterclaim against AFMC and a third-party complaint against Tangopoint, Inc., seeking a declaratory judgment of non-infringement and patent invalidity against both defendants. Tangopoint moves to dismiss the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), claiming that the court lacks personal jurisdiction. For the reasons set forth below, I grant Tangopoint's motion to dismiss.

I.

II. **BACKGROUND**

AFMC is a Texas corporation and wholly owned subsidiary of Acacia Research Corporation ("ARC"), a patent licensing company. Doc. No. 2. As a patent licensing company, ARC directs its subsidiaries to partner with patent owners, license patents, and share resulting revenues.

Tangopoint, a Delaware corporation with its principle place of business in Nebraska, is the owner of the two patents in question. In January 2007, Tangopoint entered into an "Exclusive Licensing Agreement" ("Agreement") concerning the two patents with Acacia Patent Acquisition Corporation ("APAC"), a subsidiary of ARC. APAC then assigned its interest in the patents to its subsidiary, AFMC.

Smartware is a New Hampshire software corporation with its principle place of business in New Hampshire. Smartware focuses its business on maintenance software, including "Bigfoot," a computerized maintenance management software ("CMMS") package.

A. **The Exclusive Licensing Agreement**

The Agreement between Tangopoint, as owner of the patents, and AFMC, as licensee, purports to grant AFMC a worldwide

exclusive license, including the exclusive right to grant sublicenses, to sue for and collect past, present, and future damages, and to seek injunctive relief in cases of patent infringement.  Doc. No. 18-1.  Tangopoint expressly retains the right to a percentage of all royalties that AFMC obtains from licenses or enforcement efforts, a limited right to terminate the Agreement, and a limited right to use the patents in its own products.  Id.

**B.   Procedural Background**

Pursuant to its rights under the Agreement, AFMC brought suit in this district against Smartware for patent infringement, claiming that Smartware's Bigfoot software infringes Patents '919 and '970.  Doc. No. 1.  Smartware responded with several affirmative defenses, including non-infringement and invalidity.  Doc. No. 8.  It also brought a counterclaim against AFMC and a third-party complaint against Tangopoint seeking a declaratory judgment of non-infringement and invalidity.  Id.

Smartware argues in its third-party complaint that this court has personal jurisdiction over Tangopoint in part because "Tangopoint knew, or should have known, that its licensing of the [patents] would subject it to counterclaims of patent invalidity in jurisdictions in which AFMC brought suit against

alleged infringers." Id.  It further asserts that Tangopoint "purposely availed itself of the privilege of conducting activities within the State of New Hampshire" because AFMC brought suit in this district to enforce the patent and Tangopoint authorized the suit when it entered into the Agreement.  Id.  Smartware does not claim that Tangopoint has any other contacts with New Hampshire.

### III. ANALYSIS

**A.   Personal Jurisdiction**

The analysis of a personal jurisdiction claim in federal court begins with Rule 4 of the Federal Rules of Civil Procedure.  Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1293 (Fed. Cir. 2012).  If a defendant is amenable to suit under Rule 4, personal jurisdiction exists unless the defendant lacks sufficient "minimum contacts" with the forum to satisfy the requirements of due process.  Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc., 603 F.3d 1364, 1368-69 (Fed. Cir. 2010).

Smartware asserts that it complied with Rule 4 by filing a properly executed waiver of service form.  Under Rule 4(k)(1)(A), the filing of a waiver of service establishes

4

jurisdiction over a defendant if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Smartware asserts that Tangopoint is subject to the jurisdiction of New Hampshire's state courts pursuant to the state's long-arm statute, N.H. Rev. Stat. Ann. § 510:4 (2013). This statute, in turn, has been authoritatively construed by the Supreme Court of New Hampshire "to permit 'the exercise of jurisdiction to the extent permissible under the Federal Due Process Clause.'" Kimball Union Acad. v. Genovesi, 70 A.3d 435, 440 (2013) (quoting Fellows v. Colburn, 34 A.3d 552, 558 (2011)). Thus, Tangopoint's personal jurisdiction challenge turns on whether it is consistent with the requirements of due process to subject it to jurisdiction in this court.

    The Constitution has two due process clauses. In general, state actors are subject to the Fourteenth Amendment's Due Process Clause and federal actors are governed by the Fifth Amendment's counterpart provision. See Malloy v. Hogan, 378 U.S. 1, 26 (1964). The constitutional basis for the due process right can be significant when considering a personal jurisdiction challenge. If jurisdiction is determined under the Fourteenth Amendment, the defendant's contacts with the state in

which the court sits will determine whether due process has been satisfied, but if jurisdiction is determined under the Fifth Amendment, a defendant's contacts with the United States as a whole will ordinarily be dispositive. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).

An action seeking patent invalidity or non-infringement arises under federal law. Accordingly, the Federal Circuit has held that such cases are subject to the Fifth Amendment's Due Process Clause. See Akro Corp. v. Luker, 45 F.3d 1541, 1544 (Fed. Cir. 1995). Congress, however, has not enacted a statute authorizing nationwide service of process in patent cases. Thus, plaintiffs such as Smartware often must rely on state long-arm statutes to effect service. When personal jurisdiction is dependent on a state long-arm statute, the Federal Circuit has held that the Fourteenth Amendment's Due Process Clause constrains the court's power to act even if the underlying cause of action is based on federal law. See Red Wing Shoe Co. v. Dockerson-Halbertstadt, Inc., 148 F.3d 1355, 1358 n.* (Fed. Cir. 1998). Accordingly, the jurisdictional issue in such cases must be resolved by using Fourteenth Amendment precedents because Smartware has relied on a state long-arm statute to effect

6

service.[1]  Id.; see also Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 713 (1982) (Powell, J., concurring) ("Because of the District Court's reliance on the Pennsylvania long-arm statute — the applicable jurisdictional provision under the Rules of Decisions Act — . . . the relevant constitutional limits would not be those imposed directly on federal courts by the Due Process Clause of the Fifth Amendment, but those applicable to state jurisdictional law under the Fourteenth.").

A court may exercise either specific or general personal jurisdiction over a defendant regardless of whether jurisdiction depends on the Fifth or the Fourteenth Amendment.  Here, Smartware argues only that the court has specific jurisdiction. Specific jurisdiction "refers to the situation in which the cause of action arises out of or relates to the defendant's contacts with the forum."  Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1563 n.10 (Fed. Cir. 1994)

---

[1]  If Congress were to enact a special service of process statute for patent cases, the Fifth Amendment's Due Process Clause would apply and all that would be required to establish personal jurisdiction in any federal court would be compliance with the statute and minimum contacts with the United States as a whole. See generally Med. Mut. of Ohio v. deSoto, 245 F.3d 561, 567 (6th Cir. 2001); In re Fed. Fountain, Inc., 165 F.3d 600, 602 (8th Cir. 1999); Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich., 97 F.3d 822, 825 (5th Cir. 1996).

(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.15 (1985)).

The Federal Circuit employs a three-prong test to evaluate a specific jurisdiction claim, asking whether (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) assertion of personal jurisdiction is reasonable and fair. Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006). The first two prongs must be proved by the plaintiff, whereas the burden to disprove the last prong rests with the defendant, who must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable . . . ." Id. at 1362 (quoting Burger King, 471 U.S. at 476-77).

Because I intend to resolve the jurisdictional issue without holding an evidentiary hearing, Smartware need only make a prima facie showing of personal jurisdiction. See Grober v. Mako Prods., Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012). Accordingly, I accept as true Smartware's well-pleaded jurisdictional allegations and resolve disputed factual issues in its favor. See id.

8

**B.     Discussion**

Tangopoint's principal argument against personal jurisdiction is that Smartware has failed to identify sufficient facts to support its conclusory assertion that Tangopoint purposefully directed its activities at residents of New Hampshire.

Smartware responds by asserting that Tangopoint is subject to jurisdiction because it licensed its patents to an entity that brought an infringement action in this district. Smartware does not allege that Tangopoint ever conducted business with a New Hampshire resident. It does not claim that Tangopoint was directly involved in an effort to enforce the patents here. Nor does it point to any facts that would support a claim that Tangopoint had reason to believe when it entered into the Agreement that AFMC had plans to sue an alleged infringer in New Hampshire. Thus, its jurisdictional argument depends entirely on whether AFMC's decision to sue Smartware in this district can be attributed to Tangopoint because AFMC was acting pursuant to a power that Tangopoint granted it in the Agreement.

As a general rule, due process does not permit a person to be subjected to personal jurisdiction based solely on the "unilateral activity of another party or a third person."

Burger King, 471 U.S. at 475 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984)).  The actions of a third-party agent, however, may be attributed to its principal when considering whether personal jurisdiction exists, see, e.g., Radio Sys. Corp. v. Accession, Inc., 638 F.3d 785, 791 (Fed. Cir. 2011), so long as the actions are within the scope of the agency and the agent remains subject to the principal's control.  See Akamai Tech., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1348 (Fed. Cir. 2012) (citing Restatement (Third) of Agency § 1.01 (2006)) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act . . . subject to the principal's control, and the agent manifests assent or otherwise consents to so act.").

In contrast, a license agreement that merely entitles the licensor to royalties without reserving a right to control the licensee's actions will not, by itself, be sufficient to support personal jurisdiction.  See Red Wing Shoe, 148 F.3d at 1361; see also Breckenridge, 444 F.3d at 1364 (explaining that licensees' contacts with the forum state in Red Wing Shoe were "essentially 'unilateral'" even though the patentee received payments from

10

product sales by licensees within the forum state). Thus, whenever the Federal Circuit has held that personal jurisdiction exists over a patent licensor, it has either relied on other actions in the forum state by the licensor or a provision in the license agreement itself that gives the licensor control over the licensee's actions. See, e.g., Breckenridge, 444 F.3d at 1367 (finding jurisdiction where the license agreement "contemplated an ongoing relationship between [licensor and licensee] beyond royalty payments" and the licensor coordinated with the licensee in sending cease and desist letters into the forum state); Genetic Implant Sys., Inc. v. Core-vent Corp., 123 F.3d 1455, 1458-59 (Fed. Cir. 1997) (finding jurisdiction where an "exclusive" out-of-state distributor "promotes and sells" a product in the forum state and the licensor sold products in state prior to the distribution agreement); Akro, 45 F.3d at 1546 (finding jurisdiction where the licensor entered into a license agreement retaining the power to bring suit with a forum state licensee, and used this power to send warning letters into forum state).

    A close examination of the Agreement reveals that Tangopoint lacks sufficient control over AFMC to permit its forum-based actions to be attributed to Tangopoint. Although

Tangopoint remains the record owner of the patents and is required to pay maintenance fees for patent renewals, it has completely surrendered its right to enforce the patents.  Doc. No. 18-1, ("Licensor expressly retains no rights in or to the Patents, including without limitation, the right to sue for infringement of the Patents . . . .").  Smartware nevertheless points to several other provisions in the Agreement that obligate Tangopoint to cooperate with AFMC in its enforcement effort.  Doc. No. 19-1.  Specifically, it cites a provision allowing AFMC to require Tangopoint to join as a plaintiff "in the event APAC's counsel determines that Licensor is a necessary party to the action."  Doc. No. 18-1.  It further notes that Tangopoint grants AFMC the power of attorney to add Tangopoint "to any such action and bring an action in [Tangopoint's] name." Id.  Neither provision, however, demonstrates a shared commitment to enforcement activities or gives Tangopoint control over locations where an enforcement action may be brought.  At most, the provisions authorize AFMC to force Tangopoint into litigation in the event that a court finds Tangopoint to be a necessary party – a far cry from Tangopoint retaining any enforcement authority.

Smartware also claims that AFMC's decision to sue in this district is attributable to Tangopoint because the Agreement makes AFMC Tangopoint's agent.  I reject this argument because the Agreement simply does not give Tangopoint the kind of control over AFMC that is required to give rise to an agency relationship.  See, e.g., St. Paul Ins. Co. v. Indus. Underwriters Ins. Co., 262 Cal. Rptr. 490, 494 (Ct. App. 1989); Restatement (Third) of Agency § 1.01 cmt. (f)(1) (2006); accord Akamai, 692 F.3d at 1348.

## IV.    CONCLUSION

Smartware has failed to sufficiently allege that Tangopoint purposefully directed its activities at residents of New Hampshire.  Accordingly, this court lacks personal jurisdiction over Tangopoint.  Tangopoint's motion to dismiss (Doc. No. 17) is granted.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 21, 2013

cc:   Robert M. Shore, Esq.
      Justin P. Hayes, Esq.
      Michael J. Persson, Esq.